UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

CELESTINE DUBIE,

        Plaintiff,

    v.

BUFFALO CONCRETE ACCESSORIES,
INC.,

        Defendant.

———————————————————————

21-CV-744-LJV
DECISION & ORDER

On June 16, 2021, the *pro se* plaintiff, Celestine Dubie, commenced this action, alleging that the defendant, Buffalo Concrete Accessories, Inc. ("Buffalo Concrete"), subjected her to discrimination based on race and color, sexual harassment, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  *See* Docket Item 1 (complaint); Docket Item 3 (Equal Employment Opportunity Commission ("EEOC") charge and right-to-sue letter). On July 19, 2021, Buffalo Concrete moved to dismiss the complaint, Docket Item 8; on August 10, 2021, Dubie responded, Docket Item 13; and on August 24, 2021, Buffalo Concrete replied, Docket Item 15.

For the following reasons, Buffalo Concrete's motion to dismiss will be granted unless Dubie amends her complaint to correct the deficiencies noted below.

## FACTUAL BACKGROUND[1]

Dubie was employed by Buffalo Concrete from April 29, 2019, until she was discharged in early January 2020.[2]  Docket Item 1 at ¶¶ 4-6; Docket Item 3 at 2.  Buffalo Concrete has five to ten employees.  Docket Item 1 at ¶ 2.

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In deciding the motion, the Court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Here, the EEOC charge, right-to-sue letter, and notice are all three, and the Court considers each document.

When Dubie filed her response to the motion to dismiss, she also filed several exhibits in support of her response.  *See* Docket Items 12, 14.  Those exhibits are: (1) excerpts from Buffalo Concrete's employee manual, Docket Item 12 at 2-9; (2) an email sent from Dubie to Mary Hartley, a supervisor at Buffalo Concrete, on June 4, 2019, *id.* at 10; (3) an email draft from Dubie to Hartley dated December 10, 2019, *id.* at 11-13; (4) an email draft from Dubie to "Kathy"—presumably Kathy Grimm, the former President of Buffalo Concrete—dated December 11, 2019, *id.* at 14; (5) an appeal letter addressed to the New York State Department of Labor Appeal Board, *id.* at 15-17; (6) research on the origins of the expression "in a coon's age," *id.* at 18; (7) an envelope from an EEOC mailing, Docket Item 14 at 2; (8) Form 161 from the EEOC entitled "Information Related to Filing Suit," *id.* at 3; (9) a status report from BestSelf Behavioral Health, *id.* at 4-6; and (10) a settlement offer from Dubie to Buffalo Concrete, *id.* at 7-10.  Dubie's complaint refers to an email from "June 4th."  Docket Item 1 at ¶ 19.  Accordingly, the Court deems the email from Dubie to Hartley sent on June 4, 2019, Docket Item 12 at 10, as incorporated by reference in the complaint and considers it on the present motion to dismiss.  Dubie's complaint does not refer to the other documents, and the Court therefore does not consider them.

Dubie should understand that any written material she seeks to include in any amended complaint should be attached to the amended complaint or incorporated by reference.  *See Sira*, 380 F.3d at 67.

[2] In the complaint, Dubie alleges that the last discriminatory act occurred on January 3, 2020, but she does not specify what that act was.  Docket Item 1 at ¶¶ 6-7.  In the EEOC charge, however, Dubie says that she was discharged "[o]n or about January 8, 2020."  Docket Item 3 at 2.

Throughout her employment, Dubie heard her "co-workers and [her] potential new boss" say "comments[,] such as 'coon' and 'roots.'"  Docket Item 3 at 2.  Dubie researched the meaning of a phrase that included the word "coon."  *Id.*  When Buffalo Concrete saw an email regarding her research on that comment, Buffalo Concrete began "blind carbon cop[ying]" her emails "without [her] knowledge."  *Id.*

Dubie also "experienced what felt and seemed like personal attacks regarding [her] work performance."  *Id.*  This included accusations regarding "making coffee, . . . loss of documents, and smoking in a restroom."  *Id.*  These attacks "happened regularly, daily[,] and throughout the week" during the entirety of Dubie's employment.  *Id.*; *see also* Docket Item 1 at ¶¶ 5-6.  Indeed, the attacks happened so often that they affected Dubie's emotional, mental, and physical well-being.  Docket Item 3 at 2.

At some point during Dubie's employment, a "tenant" of Buffalo Concrete also made an "implied sexual innuendo" to Dubie about the general manager of Buffalo Concrete and how Dubie might keep her job.[3]  Docket Item 1 at ¶ 19.

Dubie raised her concerns three times with the owner of Buffalo Concrete, but the "owner failed to hear [her] grievances on" each occasion.  *Id.*  Instead, the owner "allow[ed] the acts to continue."  *Id.*  "All [of the] acts were carried out . . . by the then [general manager and] now co-owner."  *Id.*  And Dubie's co-workers followed the lead of the general manager's behavior.  *Id.*

---

[3] The precise allegation in the complaint reads a "tenant of defendant implied sexual innuendo to GM to keep employment."  Docket Item 1 at ¶ 19.  The Court assumes that Dubie means that a tenant directed a sexual innuendo at Dubie regarding her and the general manager of Buffalo Concrete.  If this is incorrect, Dubie should clarify this allegation in any amended complaint.  In particular, she should provide enough detail so that the Court can discern what was said, whether a sexual reference was made, to whom it was directed, and about whom it was made.

On August 13, 2020, Dubie filed an EEOC charge.  Docket Item 3 at 2.  In the EEOC charge, Dubie indicated that Buffalo Concrete discriminated against her based on her race and color, but she did not indicate that she was discriminated against based on her sex.  *Id.*  The EEOC issued a "right-to-sue letter" and notice on March 16, 2021. *Id.* at 3-4.  The notice instructed Dubie that any lawsuit she may wish to file "under federal law . . . **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost."  *Id.* at 4 (bold emphasis, capitalization, and underlining in original).  In her compliant, Dubie says that she received the notice on the same day it was issued—March 16, 2021.  Docket Item 1 at ¶¶ 12, 18.

### LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

## DISCUSSION

Buffalo Concrete argues that all Dubie's claims must be dismissed because she does not allege that Buffalo Concrete is an "employer" within the meaning of Title VII and because her complaint is time-barred.  Docket Item 8-1.  In addition, Buffalo Concrete argues that Dubie failed to exhaust her administrative remedies on her sexual harassment claims.  *Id.*  Finally, it argues that Dubie's claims for racial discrimination, retaliation, and hostile work environment also fail to plausibly state a claim for relief.  *Id.*  The Court addresses each argument in turn.

## I.      EMPLOYER STATUS UNDER TITLE VII

Title VII "makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-2(a)(1)).  It applies, however, only to entities that meet the statute's definition of "employer."  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005).  Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b).

That requirement of fifteen or more employees is a substantive element of a plaintiff's Title VII claim.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) ("[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.").  Therefore, to survive a motion to dismiss, a

5

plaintiff must allege facts plausibly suggesting that her employer is covered under Title VII. *Shultz v. Valley View Cheese, Inc.*, 2021 WL 4025248, at *3 (W.D.N.Y. Sept. 2, 2021).

In her complaint, Dubie does not allege that Buffalo Concrete employed fifteen or more employees. Docket Item 1. In fact, she alleges the opposite—that Buffalo Concrete had only five to ten employees. *Id.* at ¶ 2. Therefore, Dubie has not plausibly alleged that Buffalo Concrete had fifteen or more employees for twenty or more weeks of the year and was a covered employer under Title VII.

In her response, Dubie raises new allegations about who worked at Buffalo Concrete and seeks to provide context for the factual allegations raised in the complaint. Docket Item 13. She alleges that Buffalo Concrete had three retail locations, and she says that she meant to plead that Buffalo Concrete had five to ten employees at the location where she worked, not overall. *Id.* at 3. Dubie also alleges that an employee was out on disability and that Buffalo Concrete hired Dubie to replace another employee. *Id.* And she alleges that in a 2017 news article, Buffalo Concrete said that it had ten employees but "intended to increase that number." *Id.* at 4. Lastly, she alleges that she had heard about four previous employees, *id.*, but she does not allege when or for how long those employees worked at Buffalo Concrete.

Putting aside whether the Court may and should consider these new allegations,[4] those allegations still do not plausibly suggest that Buffalo Concrete was a covered

---

[4] Normally, a court "will not consider [] factual allegations raised for the first time in a brief in opposition to a motion to dismiss." *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 3817190, at *2 n.3 (S.D.N.Y. Aug. 14, 2019). In any future filings, any facts that Dubie wants the Court to consider should be pleaded in any amended complaint and not raised in a response.

6

employer under Title VII.  Although she alleges that Buffalo Concrete said that it intended to increase its number of employees beyond ten in 2017 and that she knew of another employee out on disability, Dubie does not allege any facts to plausibly suggest Buffalo Concrete grew to fifteen or more employees.  Likewise, although she says that she heard about four other employees and that Buffalo Concrete had other locations, she still alleges nothing that would add up to fifteen.

Dubie therefore has failed to plead that Buffalo Concrete is an employer within the meaning of Title VII.  And for that reason, she has failed to state a claim under Title VII. [5]

## II.   TIMELINESS OF COMPLAINT

Title VII claims must be filed in federal court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC.  *See* 42 U.S.C. § 2000e-5(f)(1).  "The [90-day] period is measured in calendar days, not business days."  *Carpenter v. City of New York*, 2011 WL 2118599, at *2 (W.D.N.Y. May 25, 2011).  And the deadline is strict.  *See Manley v. N.Y.C. Police Dep't*, 2005 WL 2664220, at *3-5 (E.D.N.Y. Oct. 19,

---

[5] In her response, Dubie asks the Court for leave to conduct discovery on Buffalo Concrete's employee history.  Docket Item 13 at 3, 14-15.  In reply, Buffalo Concrete asks that the motion to dismiss be converted to one for summary judgment and to permit Buffalo Concrete to submit evidence that it employed fewer than fifteen people.  Docket Item 15 at 7.  Both parties' requests are denied without prejudice to renewal should Dubie file an amended complaint.  If Dubie is uncertain about the number of employees Buffalo Concrete had at the time of her employment but believes that Buffalo Concrete had at least fifteen employees, she may allege that fact based upon her "information and belief." *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("[A] plaintiff [may] 'plead[] facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." (internal citations omitted)).

2005) (dismissing *pro se* plaintiff's claims as untimely when plaintiff filed complaint 91 days after receiving right-to-sue letter); *see also Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 590 (W.D.N.Y. 2008) (same).  In fact, "[i]n the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."  *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir. 1984) (citation omitted).

Dubie alleges that she received the right-to-sue letter on March 16, 2021.[6] Docket Item 1 at ¶¶ 12, 18.  She filed her suit 92 days later—on June 16, 2021.  Docket Item 1.  Based on the allegations in her complaint, therefore, Dubie's complaint is untimely.[7]

If this Court were to instead consider Dubie's new allegations in her response, her suit would be timely.  In her response, Dubie alleges that she actually received the EEOC's right-to-sue letter on March 20, 2021, Docket Item 13 at 4-5, meaning that her suit filed 88 days later on June 16, 2021, would have been timely.[8]  But based on the

---

[6] The EEOC issued the right-to-sue letter that same day, Docket Item 3 at 3-4, so the allegation that Dubie received the letter on the day that it was issued may well be a typographical error or otherwise simply a mistake.  If so, that mistake should be corrected in any amended complaint.

[7] Dubie does not assert that equitable tolling extended her time to commence a lawsuit, nor does she allege any extraordinary facts that would trigger equitable tolling. "[T]he Supreme Court has recognized only four situations justifying equitable tolling of Title VII's time limits: (1) where a claimant receives inadequate notice of the right to sue; (2) where circumstances justify tolling while a claimant's motion for appointment of counsel is pending; (3) where the court has led a plaintiff to believe she has done everything required of her; or (4) where affirmative conduct by the defendant has lulled the plaintiff into inaction."  *Coffey v. Donahoe,* 2013 WL 3244788, at *5 (W.D.N.Y. June 26, 2013) (citing *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984)).

[8] Buffalo Concrete's reply suggests that Dubie may have downloaded the right-to-sue letter from the EEOC portal on March 16 or 17, 2021.  Docket Item 15 at 7. It argues that if Dubie did indeed download the letter from the portal, the date of the download—not the date the letter arrived by mail—should be used as the date received. *Id.*  Based on that suggestion, Buffalo Concrete asks the Court to convert the motion to

allegations in her complaint—which, as noted above, the Court relies on here—Dubie's

complaint is untimely, and her suit is time-barred.[9]

### III.   EXHAUSTION OF REMEDIES FOR SEXUAL HARASSMENT CLAIMS

"Title VII requires a plaintiff to exhaust administrative remedies before filing suit in

federal court."[10]  *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015).

Under a narrow exception to the exhaustion requirement, "claims not raised in an EEOC

complaint may still be part of the complaint later filed in federal court if they are

reasonably related to the claim filed with the agency."  *Littlejohn v. City of New York*,

795 F.3d 297, 322 (2d Cir. 2015) (citation and internal quotation marks omitted).  A

claim is reasonably related "if the conduct complained of would fall within the scope of

the EEOC investigation which can reasonably be expected to grow out of the charge

that was made."  *Id.*

Dubie's EEOC charge focuses solely on discrimination based on race and color,

not sex:  She checked boxes indicating that she was discriminated against based only

on race and color, and she left the box labelled "sex" blank.  *See* Docket Item 3 at 2.

---

dismiss to a motion for summary judgment and to permit limited discovery on when
Dubie received the letter.  *Id.* at 7-8.  That request is denied without prejudice.  If Dubie
amends her complaint to allege a later date of receipt, Buffalo Concrete may raise this
argument in a later motion for summary judgment.

[9] In any amended complaint, Dubie should clarify the precise date on which she
received the right-to-sue letter.

[10] Buffalo Concrete asserts that the exhaustion requirement is jurisdictional and
moves to dismiss this claim based on lack of subject matter jurisdiction.  Docket Item
8-1 at 15.  But the exhaustion requirement is not jurisdictional; rather, it is a precondition
to bringing suit that is subject to equitable exceptions.  *See Fowlkes v. Ironworkers Loc.
40*, 790 F.3d 378, 384-86 (2d Cir. 2015).  Buffalo Concrete's motion to dismiss based
on lack of subject matter jurisdiction therefore is denied.

Moreover, the allegations in the EEOC charge were limited to racially-charged comments by "co-workers and [her] potential new boss."  *Id.*  And the EEOC charge concluded with a statement that Dubie believed she had been "discriminated against because of [her] race . . . and color" but said nothing about discrimination based on sex. *Id*.

Moreover, Dubie's sexual harassment claims are not "reasonably related" to the claims raised in her EEOC charge.  The complaint in this Court alleges that a tenant of Buffalo Concrete made an "implied sexual innuendo" to Dubie about the general manager of Buffalo Concrete and how Dubie might "keep [her] employment."  Docket Item 1 at ¶ 19.  That allegation of sexual harassment has nothing to do with the race- and color-based discrimination Dubie claims and therefore does not "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *See Littlejohn*, 795 F.3d at 322.  In fact, the person who made the remark that gave rise to the claim of sexual harassment—a tenant—was not involved in the alleged racial discrimination described in the EEOC charge.  *Cf. id.* at 323 (sexual harassment claim not "reasonably related" to EEOC racial discrimination claims where alleged perpetrator of sexual harassment not involved in alleged racial discrimination).  So the allegations of sexual harassment and racial discrimination seem to be completely unrelated.

In her response, Dubie argues that she actually did exhaust her administrative remedies on her sexual harassment claims, or that her failure to exhaust should be excused, for two reasons.  Docket Item 13.  First, she asserts that telling an EEOC investigator about the "sexual innuendo" in a phone interview before the charge was

filed met her exhaustion obligation. *Id.* at 5. And second, she alleges that she uploaded an "appeal letter" detailing the sexual innuendo to the EEOC portal and sent the letter via email to the EEOC investigator, thereby raising the issue with the EEOC. *Id*.

"[M]isrepresentations by a governmental official do not bind the government or excuse noncompliance with a statutory requirement"—including "the exhaustion requirement." *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 452-53 (S.D.N.Y. 2012) (citing *Schweiker v. Hansen*, 450 U.S. 785 (1981)). So even if the EEOC investigator erred by omitting Dubie's allegations of sexual harassment from the EEOC charge after a phone interview, that would not excuse Dubie's failure to exhaust her remedies on the sexual harassment claims. *Cf. id.* (declining to excuse plaintiff's failure to exhaust where plaintiff alleged that EEOC misplaced materials submitted to EEOC and EEOC employee told plaintiff that "both [discriminatory] categories would be examined").

Dubie's allegation that she uploaded an "appeal letter" about the sexual innuendo to the EEOC portal and emailed the letter to the EEOC investigator fares no better. Even if Dubie had taken those steps, that would not excuse Dubie's failure to exhaust: letters sent to the EEOC raising "additional claims of discrimination unrelated to the claims described in the EEOC charge cannot 'enlarge [the] scope [of the original charge] to include new claims.'" *Littlejohn*, 795 F.3d at 323 (alterations in original). EEOC regulations permit "'written statements' of fact to amend a charge, but only insofar as they 'clarify and amplify allegations made' in the original charge or 'alleg[e] additional acts which constitute unlawful employment practices related to or growing out

of the subject matter of the original charge.'"  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (quoting 29 C.F.R. § 1601.12(b)).

Here, the EEOC could have considered Dubie's appeal letter only to the extent that it amplified or clarified the original charge of racial discrimination.  So to the extent that the letter alleged different acts related to a new "unlawful employment practice[]"—sexual harassment—it was not subject to EEOC review and did not exhaust administrative remedies.  *See id.*; *see also Littlejohn*, 795 F.3d at 323-24 (plaintiff's supplemental letter about sexual harassment could not amend EEOC charge about racial discrimination because it included a "'new unlawful employment practice[] or bas[i]s for discrimination' based on sexual harassment").

Because Dubie did not exhaust administrative remedies for her sexual harassment claim and has not plausibly alleged an exception to the exhaustion requirement, she fails to state a claim for sexual harassment.

## IV.    FAILURE TO STATE A CLAIM

### A.    Racial Discrimination

To state a *prima facie* case of racial discrimination under Title VII, the plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and [(4) that she has] some minimal evidence suggesting an inference that the employer acted with discriminatory motivation."  *Littlejohn*, 795 F.3d at 307.  If she meets her burden, the defendant is presumed to have unlawfully discriminated against her, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant makes that showing, the burden

shifts back to the plaintiff to show that the defendant's stated reason is pretextual. *Id.* at 307-08.

To state a viable claim, an employment-discrimination plaintiff must plead "enough nonconclusory factual matter to nudge her claim[s] across the line from conceivable to plausible." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (alterations, citations, and internal quotation marks omitted). More specifically, to defeat a motion to dismiss, an employment-discrimination plaintiff alleging racial discrimination under Title VII "need only give plausible support to a minimal inference of discriminatory motivation" behind an adverse employment action. *Vega*, 801 F.3d at 84; *Littlejohn*, 795 F.3d at 306, 311. "An inference of discrimination can arise from circumstances including, but not limited to, [1] 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; [2] its invidious comments about others in the employee's protected group; [3] the more favorable treatment of employees not in the protected group; [4] the sequence of events leading to the plaintiff's discharge'[; or 5] . . . when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312-13 (citations omitted).

Although "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" may give rise to an inference of discrimination, *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996), "stray remarks alone do not support a discrimination suit," *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (internal quotation marks omitted). "In determining whether a remark is probative [of discriminatory intent], [courts] have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the

remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). And "[c]ourts in the Second Circuit routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim." *Ahmad v. White Plains City Sch. Dist.*, 2019 WL 3202747, at *7 (S.D.N.Y. July 16, 2019) (collecting cases).

Dubie's discrimination claim appears to be based on her "discharge" from Buffalo Concrete in January 2020. *See* Docket Item 1 at ¶¶ 6-7; Docket Item 3 at 2. But even assuming that her "discharge" was an adverse action,[11] Dubie has not plausibly alleged circumstances giving rise to an inference that racial discrimination triggered that adverse action. She alleges that she heard "co-workers and [her] potential new boss" make comments that included the words "coon" and "roots." Docket Item 3 at 2. But she does not allege that these individuals had decision-making authority in personnel decisions, let alone that they were involved in Dubie's discharge. In other words, Dubie does not connect those allegations to her discharge, and they therefore do not give rise to an inference that racial discrimination triggered the adverse employment action against her. Because Dubie's allegations do not plausibly support even a minimal

---

[11] The complaint is not clear as to the circumstances of Dubie's "discharge." *See* Docket Item 1. From the complaint, the Court cannot tell whether Dubie was fired, quit, felt compelled to quit, or left employment for some other reason.

inference of discriminatory motivation, her complaint fails to state a claim for racial discrimination.

### B.   Retaliation

To establish a *prima facie* case of retaliation under Title VII, "a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation and internal quotation marks omitted).

"'Protected activity' includes opposition to a discriminatory employment practice," *Hubbard v. Total Commc'ns., Inc.*, 347 F. App'x 679, 680-81 (2d Cir. 2009), and encompasses "informal protests" such as "making complaints to management," *Belton v. Borg & Ide Imaging, P.C.*, 2021 WL 98392, at *7 (W.D.N.Y. Jan. 12, 2021) (citation omitted). "But such [informal] complaints must be sufficiently specific so that the employer is put on notice that the plaintiff believes she is being discriminated against on the basis of a protected characteristic." *Id.* (internal quotation marks omitted); *Brummell v. Webster Cent. Sch. Dist.*, 2009 WL 232789, at *5 (W.D.N.Y. Jan. 29, 2009)). In other words, "[g]eneralized complaints" about mistreatment are insufficient. *McCullough v. John T. Mather Hosp. of Port Jefferson, N.Y., Inc.*, 2019 WL 1755436, at *8 (Apr. 19, 2019). "To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to h[er] protected status, [s]he fails to establish that [s]he was engaged in [a] protected activity." *Id.* (citation omitted).

Dubie alleges that the "owner failed to hear [her] grievances on three separate occasions."  Docket Item 1 at ¶ 19.  But she does not allege what she was complaining about, much less that she complained that she was "being discriminated against on the basis of" her race.  *See Belton*, 2021 WL 98292, at *7.  In fact, based on the allegations Dubie raises in her response, it appears that Dubie complained to Hartley about the manner in which Hartley corrected Dubie's work.  *See* Docket Item 12 at 10; Docket Item 13 at 8.  So Dubie's generalized grievances to management could not have put the defendant on notice that Dubie believed she was being discriminated against based on her race and color.

Because Dubie has not alleged that she suffered adverse action as a result of a protected activity such as complaining about racial discrimination, she has failed to state a viable retaliation claim under Title VII.

### C.    Hostile Work Environment

"Under Title VII, an employee seeking to bring a hostile work environment claim must show [1] that she . . . is a member of a protected class; [2] that she suffered unwelcome harassment; [3] that she was harassed because of her membership in a protected class; and [4] that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment."  *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).  "This test has objective and subjective elements:  the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21

(1993)).  Courts look at the totality of the circumstances and examine factors including

"the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.

Although "[t]he standard for a hostile work environment claim is a demanding

one" and "Title VII is not intended to create a code of civility," *Scott v. Memorial Sloan-

Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 599 (S.D.N.Y. 2002), the Second Circuit

"ha[s] repeatedly cautioned against setting the bar too high," *Terry v. Ashcroft*, 336 F.3d

128, 148 (2d Cir. 2003).

> [W]hile a mild, isolated incident does not make a work environment hostile,
> the test is whether "the harassment is of such quality or quantity that a
> reasonable employee would find the conditions of her employment altered
> for the worse."  The environment need not be "unendurable" or "intolerable."
> Nor must the victim's "psychological well-being" be damaged.  In short, "'the
> fact that the law requires harassment to be severe or pervasive before it
> can be actionable does not mean that employers are free from liability in all
> but the most egregious cases.'"

*Id.* (citations omitted).

"While discrete claims of discrimination and retaliation must be brought within the

300-day limitations period to be actionable, a different rule applies with regard to hostile

work environment claims."  *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50

(S.D.N.Y. 2019) (citation omitted).  "Hostile environment claims are different in kind from

discrete acts.  Their very nature involves repeated conduct."  *Nat'l R.R. Passenger

Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Therefore, "as long as any act contributing

to the hostile work environment claim falls within the 300-day period, 'the entire time

period of the hostile environment may be considered by a court for the purposes of

determining liability.'"  *Zoulas*, 400 F. Supp. 3d at 50 (citing *Morgan*, 536 U.S. at 117).

Dubie filed a charge of discrimination on August 13, 2020.  Docket Item 1 at ¶ 8; Docket Item 3 at 2.  Therefore, as long as an act contributing to the hostile work environment occurred within 300 days before that—that is, on or after October 18, 2019—the entire time period of her hostile work environment may be considered.

Dubie alleges that she was subject to "microaggression[s]; racial bias[]; workplace harassment; [and] racial slurs, jokes, [and] stereotype[s]" throughout her employment at Buffalo Concrete.  Docket Item 1 at ¶¶ 5, 6, 13(j).  She identifies May 16 to June 4, 2019; June 10, 2019; August 1, 2019; September 1, 2019; October 1, 2019[12]; November 1, 2019; December 1, 2019; and January 3, 2020, as when discriminatory acts occurred.  *Id.* at ¶¶ 5-6.

But Dubie does not allege any specific act of discrimination connected to any specific date, and the complaint therefore fails to allege any action within the 300-day limitations period.  Indeed, even considering the new allegations raised in her response to the motion to dismiss, Dubie still has not alleged an act within the limitations period that allegedly contributed to the hostile work environment.  *See* Docket Item 13 at 8 (email regarding mistreatment sent on June 4, 2019); *id.* (emails drafted regarding "behavior still being endured in September 2019"); *id.* at 11 (racial slur said in Dubie's presence in June 2019).  And with no allegation of any act inside the limitations period, none of the alleged related acts from outside the limitations period may be considered.

---

[12] The complaint alleges that an act of discrimination occurred in the month of "October" without a particular day or year.  *Id.* at ¶ 6.  Based on the sequence of dates that includes August 1, September 1, November 1, and December 1 of 2019, *see id.,* the Court assumes that Dubie intended to allege a discriminatory act in October 2019.

The complaint therefore fails to state a timely claim for a hostile work environment.[13]

## V.    LEAVE TO AMEND

In Dubie's response, she asks for leave to amend her complaint. [14]  Docket Item 13 at 14.  Because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), Dubie has 45 days to file an amended complaint that corrects the deficiencies noted above.

## CONCLUSION

For the reasons stated above, Buffalo Concrete's motion to dismiss, Docket Item 8, will be granted unless Dubie amends her complaint, within 45 days, to correct the

---

[13] Buffalo Concrete also argues that Dubie fails to plausibly allege that the workplace misconduct was "severe or pervasive enough to create an objectively hostile or abusive work environment."  Docket Item 8-1 at 21-23 (quoting *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020)).  Given the multitude of other pleading deficiencies in the complaint, the Court leaves that analysis for another day.  But in any amended complaint, Dubie should be sure to allege facts that plausibly show workplace misconduct "severe or pervasive enough to create an objectively hostile or abusive work environment."  *See Alfano*, 294 F.3d at 374.

[14] Dubie also asks for discovery on the "[n]ame and information of Peter Gaglio's sister who worked in the ECMC [e]mergency [r]oom."  Docket Item 13 at 15.  That request is denied as premature.  "Local Rule of Civil Procedure 26(b) provides that '[s]ubject to the requirements of Fed. R. Civ. P. 26(a)(1), a party may not seek discovery from any source prior to the Rule 26(f) conference, absent the parties' agreement or a Court order setting a discovery schedule.'"  *Micolo v. Fuller*, 2016 WL 158591, at *2 (W.D.N.Y. Jan. 13, 2016).  Moreover, given the nature of Dubie's claims, it is not clear to this Court that Dubie's discovery request is relevant.  *See* Fed R. Civ. P. 26(b)(1) (scope of discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

deficiencies noted above.  No later than 30 days after any amended complaint is filed,

Buffalo Concrete may answer, move against, or otherwise respond to the amended

complaint.  If Dubie does not file an amended complaint within 45 days, her complaint

will be dismissed and the Clerk of the Court shall close this case without further order.

    SO ORDERED.

    Dated:   March 28, 2022
             Buffalo, New York


                                                 */s/ Lawrence J. Vilardo*
                                                 LAWRENCE J. VILARDO
                                                 UNITED STATES DISTRICT JUDGE